## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 05-20943-CR-MOORE/GARBER

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

CARLOS ALVAREZ and
ELSA ALVAREZ,

       Defendants.

_____/

### ORDER DENYING DEFENDANT CARLOS ALVAREZ'S MOTION FOR
### REVOCATION OF PRETRIAL DETENTION ORDER

THIS CAUSE came before the Court upon U.S. Magistrate Judge Andrea M. Simonton's

Orders of Detention (DE #10, 36) and Defendant Carlos Alvarez's Motion for *De Novo* Review

and Revocation of Detention Order with Incorporated Memorandum of Law (DE #43).

UPON CONSIDERATION of the Motion, and an evidentiary hearing conducted on

September 13, 2006, and September 27, 2006, and being otherwise fully advised in the premises,

the Court enters the following Order.

### I. BACKGROUND

Carlos Alvarez and his wife, Elsa Alvarez, are charged with one count each of serving as

unregistered agents of the Cuban government under 18 U.S.C. § 951.[1] On January 9, 2006, a

---

[1] 18 U.S.C. § 951 provides, in pertinent part:

(a) Whoever, other than a diplomatic or consular officer or attaché, acts in the United States as an
agent of a foreign government without prior notification to the Attorney General if required in
subsection (b), shall be fined under this title or imprisoned not more than ten years, or both. . . .

(d) For purposes of this section, the term "agent of a foreign government" means an individual

detention hearing was held before U.S. Magistrate Judge Simonton. At that hearing, Judge

Simonton concluded that: "[B]ased upon the nature of the offense here, based upon the

commendations of the Cuban government, based upon the acknowledgment by Mrs. Alvarez that

her primary allegiance is to Cuba, based upon the fact that they are facing a substantial period of

incarceration . . . and the fact that it is a crime of deception . . . I think that it is likely that they

would flee to Cuba where they are likely to be well-received for their efforts." Tr. at 70-1.

---

who agrees to operate within the United States subject to the direction or control of a foreign
government or official, except that such term does not include--

> (1) a duly accredited diplomatic or consular officer of a foreign government, who is so
> recognized by the Department of State;

> (2) any officially and publicly acknowledged and sponsored official or representative of a
> foreign government;

> (3) any officially and publicly acknowledged and sponsored member of the staff of, or
> employee of, an officer, official, or representative described in paragraph (1) or (2), who
> is not a United States citizen; or

> (4) any person engaged in a legal commercial transaction.

(e) Notwithstanding paragraph (d)(4), any person engaged in a legal commercial transaction shall
be considered to be an agent of a foreign government for purposes of this section if--

> (1) such person agrees to operate within the United States subject to the direction or
> control of a foreign government or official; and

> (2) such person--

>> (A) is an agent of Cuba or any other country that the President determines (and so
>> report to the Congress) poses a threat to the national security interest of the United
>> States for purposes of this section, unless the Attorney General, after consultation
>> with the Secretary of State, determines and so reports to the Congress that the
>> national security or foreign policy interests of the United States require that the
>> provisions of this section do not apply in specific circumstances to agents of such
>> country . . .

2

Accordingly, Judge Simonton ordered that the Defendants be pretrial detained. Defendants now appeal that ruling. This Court held a hearing with respect to Elsa Alvarez's Motion to Revoke Pretrial Detention on May 31, 2006. At that hearing, the Court noted that weight of the evidence against Defendant Elsa Alvarez was substantially different than that against Defendant Carlos Alvarez. The Court, in its Order of June 16, 2006 (DE #118), granted Elsa Alvarez's Motion to Revoke Pretrial Detention. Subsequently, this Court held a hearing with respect to Carlos Alvarez's Motion for *De Novo* Review and Revocation of Detention Order with Incorporated Memorandum of Law (DE #43) on September 13, 2006, and September 27, 2006.

## II. STANDARD OF REVIEW

District courts review magistrate judges' findings regarding pretrial detention *de novo*. See U.S. v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992) ("When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release"); U.S. v. Hurtado, 779 F.2d 1467, 1481 (11th Cir. 1985) (requiring district courts to "undertake de novo review of the pretrial detention determinations of the magistrates"). A district court order granting or denying detention presents mixed questions of law and fact subject to plenary review on appeal, and purely factual findings will not be disturbed unless they are clearly erroneous. See United States v. Quartermaine, 913 F.2d 910, 915 (11th Cir. 1990) (citing United States v. King, 849 F.2d 485, 487 (11th Cir. 1988)).

### A.    Pretrial Detention

The Bail Reform Act "carefully limits the circumstances under which detention may be sought to the most serious of crimes." United States v. Salerno, 481 U.S. 739, 747 (1987); see

3

also Stack v. Boyle, 342 U.S. 1, 5 (1951) ("Unless the right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning"); Girodano, 370 F. Supp. 2d at 1261 ("there is a statutory presumption that [defendant] should be released pending his trial"). A judicial officer may, however, order the detention of a defendant if the government proves by a preponderance of the evidence that the defendant poses a risk of flight such that no condition or combination of conditions will reasonably assure defendant's trial presence. See United States v. King, 849 F.2d 485, 489 (11th Cir. 1988); see also United States v. Medina, 775 F.2d 156, 161-62 (11th Cir. 1985); Bail, 32 GEO. L.J. ANN. REV. CRIM. PROC. 294, 296 (2003). Further, the Federal Rules of Evidence do not apply at detention hearings and evidence that might not be admissible at trial may be used in a detention hearing. See United States v. Apker, 964 F.2d 742, 744 (8th Cir. 1992). In fact, courts are "bound to consider the government's proof, no matter what future constitutional challenges the Defendants make." United States v. Al-Arian, 280 F. Supp. 2d 1345, 1351 (M.D. Fla. 2003); see also United States v. Angiulo, 755 F.2d 969, 974 (1st Cir. 1985).

Pursuant to 18 U.S.C. § 3142(f), in cases involving a "serious" risk that the defendant will flee, the Court is required to hold a hearing to determine "whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id. "If, after a hearing pursuant to [section 1342(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial." 18 U.S.C. § 3142(e). As stated above, the Government is required to prove, by a preponderance of the evidence, first that

the defendant poses a "serious risk of flight." <u>United States v. Giordano</u>, 370 F. Supp. 2d 1256,

1258 (S.D. Fla. 2005); <u>see also</u> <u>United States v. Medina</u>, 775 F.2d 1398, 1402 (11th Cir.1985).  If

the Court finds that the Government has satisfied this burden, it must then determine "whether

any condition or combination of conditions . . . will reasonably assure the appearance of such

person . . . ."  18 U.S.C. § 3142(f).  In determining whether there are conditions of release that

will "reasonably assure" the appearance of the person as required the Court should take into

account:

> (1) The nature and circumstances of the offense charged;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  Id.

B.      Due Process Concerns

The length of pretrial detention can raise constitutional and due process concerns.  "[T]he

due process limit on the duration of preventive detention requires assessment on a case-by-case

basis, since due process does not necessarily set a bright line limit for length of pretrial

confinement."  <u>United States v. Gonzales-Claudio</u>, 806 F.2d 334, 340 (2d Cir. 1986) (quoting

<u>United States v. Salerno</u>, 794 F.2d 64, 78-79 (2d Cir. 1986)).  In <u>United States v.</u>

Gonzales-Claudio, the government did not dispute that "at some point and under some circumstances, the duration of pretrial detention becomes unconstitutional." 806 F.2d 334, 339 (2d Cir. 1986). The amount of time, however, which triggers due process concerns varies from circuit to circuit and case by case. See, e.g., United States v. Berrios-Berrios, 791 F.2d 246 (2d Cir. 1986) (eight months of pretrial detention was not unconstitutional solely because of its length); United States v. Colombo, 777 F.2d 96, 101 (2d Cir. 1985) (after seven months of pretrial detention, court declined to decide whether a substantial period of continued detention would violate Constitution); United States v. Martinez, 678 F. Supp. 267, 269 (S.D. Fla. 1988) (district court refused release after fourteen months of pretrial detention). Defendant was arrested in January 2006, and this case is scheduled to proceed to trial in January 2007 after the Court granted a motion by the Defendants to continue the trial (DE #35, 38). Thus, the Court finds, particularly in light of Defendants' motion to continue the trial, that the expected length of pretrial detention for Defendant does not violate Defendant's right to due process.

### III. FINDINGS OF FACT[2]

A.    Background

1.    On December 22, 2005, the Government charged Carlos Alvarez ("Defendant"), and his wife, Elsa Alvarez, each with one count of failing to register as a foreign agent in violation of 18 U.S.C. § 951. DE #3.

2.    On that same day, a warrant was issued for Defendant's arrest. DE # 5. On January 6, 2006, Defendant was arrested.

3.    On January 19, 2006, a hearing was held before United States Magistrate Judge

---

[2] For the purposes of these findings of fact, the Court relies on the Detention Order of Magistrate Judge Simonton, the testimony of Special Agent Albert Alonso, one of the agents who interviewed Defendant, and the exhibits entered into evidence at the September 13, 2006, and September 27, 2006 Pretrial Detention Hearings ("PTD Hearings").

Simonton, who determined that "based upon the nature of the offense here, based upon the commendations of the Cuban government . . . based upon the fact that they are facing a substantial period of incarceration . . . and the fact that it is a crime of deception . . . I think that it is likely that they would flee to Cuba where they are likely to be well-received for their efforts." Tr. of Jan. 19, 2006 proceedings before Magistrate Judge Simonton ("Jan. T.") at 70-1. Accordingly, and on the basis of this finding, Magistrate Judge Simonton ordered that the Defendants be pretrial detained.

4. The Government stated at the proceedings before Magistrate Judge Simonton that "the content of the evidence in this case rests largely on a series of voluntary and recorded confessions that were given by both defendants over the course of a few days in June and July" of 2005. Jan. T. at 9.

5. On February 13, 2006, counsel for Defendant filed a motion seeking revocation of Judge Simonton's detention order. DE #42.

6. On September 13, 2006, and September 27, 2006, this Court held a *de novo* evidentiary hearing on Defendant's motion.

   B.   Carlos Alvarez's Involvement with the Government of Cuba

7. Defendant allegedly acted as an agent for the government of the Republic of Cuba from 1978 through approximately June 2005. See Pretrial Det. Hrgs. of Sept. 19 & 27 ("Sept. Hrgs."), Govt. Ex. 1.

8. Defendant gathered information on individuals and groups in the Miami area who espoused views opposed to the Republic of Cuba and that nation's political leader, Fidel Castro. Order of Det. at 2.

9. Defendant used surreptitious means to communicate his observations and conclusions including sending coded messages via shortwave radio and, as technology advanced, using computers with encryption technology. Id. at 3.

10. Defendant took the lead and was responsible for the use of the computer and reading and decrypting messages, which included requests or "taskings" from the Republic of Cuba's Intelligence Service. Id. Defendant also used encrypted communications placed on computer disks that were mailed to post office boxes. Id. He also opened a post office box in the United States as directed by Cuban officials. Id. at 4.

11. Defendant attempted to destroy all evidence of these communications when they were received by either erasing information on the computer or by burning paper documents. Id. at 3.

12.    Defendant was given the code name "David" in connection with his communications to the Republic of Cuba Intelligence Service. Id. at 4.

13.    Defendant traveled to Cuba at least twelve (12) times from 1978 to 2005. Sept. Hrgs., Govt. Ex. 7. Defendant has also traveled to other international destinations besides Cuba at least twenty-five (25) times. Id. Defendant traveled under both his United States passport and his Republic of Cuba passport.

14.    In the 1980s, Defendant traveled to New York with his wife two or three times, where he met with Amado Soto and Juan Carlos, two known Cuban Government agents. Jan. T. at 10-18.

15.    In 1986 or 1987, Defendant traveled to Mexico to meet with Roberto Carvajal, known by Defendant to be an agent of the Government of Cuba. Id.

16.    While in Mexico, Defendant was taken to a hotel and trained in radio communications and the use of micro-photography. Id.

17.    In 1991, Defendant and his wife traveled to Cuba. Id. at 19. While in Cuba, they received medals for their cooperation with the Cuban Government. Id.

18.    According to experts, the fact that the Cuban Intelligence Service or Directorate of Intelligence entrusted Defendant and his wife with highly-sensitive encryption and decryption technology demonstrates that Defendant and his wife were not merely minor operatives. Id.

19.    Defendant repeatedly gave information on friends and members of his community per his tasking by the Cuban government. Id.

20.    Defendant also reported on prominent members of the local Cuban exile community, as well as the academic community. Id.

21.    In 2002 and 2004, Carlos Alvarez told Defendant that he did have contact with the Cuban Intelligence Service, but the contact was not "operational." Id. Defendant persisted in maintaining contact with the Cuban Intelligence Service, over the objections of his wife, Elsa Alvarez. Id.

22.    Defendant met with a former agent for the Government of Cuba, Mercedes Arce, as late as 2004. Id.

23.    Defendant has consistently deceived the U.S. government, his friends, and his employer as to the true nature of his travels, labeling them as academic in nature, while giving information to the Cuban government. Jan. T. at 12-14.

C.      The History and Characteristics of Defendant

24.     Defendant is 61 years old. He has been married to Elsa Alvarez for 26 years. Together
        they have three children, aged 25, 22, and 12. He also has two children, aged 39 and 33,
        from a previous marriage. Det. Order at 5.

25.     Defendant is a naturalized U.S. citizen and first entered the United States in 1962. Id.

26.     Defendant lives with his wife, their 12 year old daughter, his mother-in-law, and his
        father-in-law. Id. Defendant is a professor at Florida International University and has
        worked there for 31 years.

27.     Defendant has no criminal history. Id.

28.     Defendant's wife and co-defendant, Elsa Alvarez, has been released from pretrial
        detention as, inter alia, the evidence proffered against her is less substantial and to allow
        her to care for her parents and daughter while awaiting trial. See Court's Order of June
        16, 2006 (DE #118).[3]

## IV. ANALYSIS

A.      The Nature and Circumstances of the Offense Charged

Carlos Alvarez is charged with one count of serving as an unregistered agent of the

government of the Republic of Cuba under 18 U.S.C. § 951. Although Defendant has not been

charged with espionage, the Government claims that Defendant's alleged crime is a "serious

national security offense." Govt. Response at 9. The Government has produced a substantial

amount of evidence, much of it memorialized in the transcript of Defendant's own

interview/confession. Further, the Government has shown Defendant's substantial international

travel patterns, including travel to Cuba via a third country. The Government alleges that "in

every other case in which a defendant has been charged with a section 951(a) violation, the

---

[3] The Court does not, of course, rely or base any of its findings on evidence produced at
Elsa Alvarez's hearing. Contra United States v. Accetturo, 783 F.2d 382, 392 (3d Cir. 1986).

defendant has been pretrial detained." Govt. Response at 10 (citing <u>e.g.</u>, <u>United States v. Shaaban Hafiz Ahmad Ali Shaaban</u>, Case No. 05-34-CR-01 (S.D. Ind.); <u>United States v. Tongsun Park</u>, Case No. S3 05 CR 59 (S.D.N.Y.)).

Here, the circumstances are such that Defendant has allegedly reported information regarding members of his community to a hostile, foreign government (indeed, the government from which many of them fled at great personal risk and sacrifice). Thus, Defendant has a high incentive to flee to Cuba or another country if he were released pending trial, while having very little incentive to remain as, presumably, the community on which he informed will not be as friendly to him as before he was indicted. The evidence has shown that the government of the Republic of Cuba appreciates the work that Defendant has performed for it and has acknowledged his efforts with commendations. It is, therefore, a substantial likelihood that Defendant would choose to flee.

Finally, the maximum sentence for a violation of 18 U.S.C. § 951 is ten (10) years imprisonment, indicating the seriousness of the offense. <u>See</u> 18 U.S.C. § 951(a). Defendant's argument that he would receive less than ten years under the Sentencing Guidelines or based upon similar cases is unavailing at this stage in the proceedings when the Court is simply reviewing the seriousness of the charge rather than the practical experience of other courts. <u>See, e.g.</u>, <u>United States v. Moss</u>, 887 F.2d 333, 336 (1st Cir. 1989) (discussing the rebuttable presumption triggered in drug felony cases where defendant's exposure is a maximum of ten years).

B.    The Weight of the Evidence

Based on the above findings of fact, the Court finds that the weight of the evidence

against Defendant is substantial. Defendant's own confession demonstrates the voluntary nature of the commencement of his activities with the Cuban government and evidence obtained from Defendant's home computer corroborates Defendant's confession. A short wave antenna found in Defendant's home provides further evidence that Defendant engaged in technologically-sophisticated methods of disseminating information in order to evade discovery of his activities. Further, the Court is "bound to consider the government's proof, no matter what future constitutional challenges the Defendants make." Al-Arian, 280 F. Supp. 2d at 1351. Thus, defense counsel's repeated assault on the admissibility of the Government's evidence is wholly without merit for purposes of the Court's analysis of the weight of the evidence as it relates to pretrial release.

The Government has demonstrated (through Defendant's own admissions) that Defendant has persisted in a pattern of deceptive behavior beyond mere words or deeds, but by following instructions on how to use sophisticated technology to prevent discovery. Further, Defendant has traveled extensively internationally and has both entered Cuba via third countries and met with Cuban officials in other countries. Finally, Defendant now knows the seriousness of the charge facing him and has the resources available to flee. See United States v. Quartermaine, 913 F.2d 910, 916-17 (11th Cir. 1990); see also United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003). Thus, the weight of the evidence against Defendant is substantial regarding both the Government's case-in-chief and Defendant's risk of flight.

C.    The History and Characteristics of the Person

The Court is also required to review the "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community,

11

community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." Defendant's character is, essentially, the gravamen of this case: whether Defendant served as an agent of a foreign government and failed to register as such with the U.S. government. The Government's evidence has shown that Defendant was willing to divulge private information about persons in his community and conceal his efforts to do so by using encryption and other evasive strategies.

Defendant's conduct and character outweigh the other factors listed. Defendant's physical and mental condition are irrelevant, except that he is healthy enough to travel and clever enough to deceive. His family ties are strong, he has been employed by Florida International University and resided in this area for a lengthy period. He (seemingly) had strong ties to his community and has no prior criminal record or record of drug/alcohol abuse. The weight of these factors diminishes, however, when viewed in light of the charge in this case and the Defendant's willingness to persist in accepting taskings from the Cuban government and report information, even over the objections of his own wife.

D.    The Nature and Seriousness of the Danger to Any Person or the Community

The danger that Defendant poses to his community is difficult to quantify. Defendant's past actions have demonstrated a willingness on his part to betray community members by divulging information about them to a hostile government. It is certainly possible that Defendant would further harm the community, but the risk of his flight is far more substantial and actual than the hypothetical danger Defendant might pose to his community. Further, courts have noted that a finding that a defendant is a risk of flight is sufficient to order pretrial detention without even considering potential danger to the community. See, e.g., United States v. Jackson, 823

12

F.2d 4, 8 (2d Cir. 1987); <u>United States v. Sazenski</u>, 806 F.2d 846, 848 (8th Cir. 1986) (per curiam); <u>Bail</u>, 34 GEO. L.J. ANN. REV. CRIM. PROC. 297, 303-04 (2005).

## V. CONCLUSION

The only way for the Court to ensure Defendant will not flee is to pretrial detain him. The Government has proved beyond a preponderance of the evidence that Defendant is a serious risk of flight. The Court finds that, based upon the nature of the offense, its findings of fact, and the characteristics of the Defendant, no combination of restrictions would "reasonably assure" his presence at future proceedings. In light of the above findings of fact and legal analysis, it is

ORDERED AND ADJUDGED that Defendant Carlos Alvarez's Motion for *De Novo* Review and Revocation of Detention Order with Incorporated Memorandum of Law (DE #43) is DENIED. It is further

ORDERED AND ADJUDGED that:

1. Defendant CARLOS ALVAREZ is to remain committed to the custody of the Attorney General of the United States of America for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. Defendant CARLOS ALVAREZ is to be afforded reasonable opportunity for private consultation with counsel; and

3. On order of the Court or on request of an attorney representing the Government, the person in charge of the corrections facility in which Defendant CARLOS ALVAREZ is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED in Chambers at Miami, Florida, this 27th day of October, 2006.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record
        U.S. Magistrate Judge Barry L. Garber

14